IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CIVIL ACTION NO. 4:16-CV-00289

HARRY L. SMITH, JR.,

                        Plaintiff,

        v.

FLANDERS HOLDINGS LLC,

                    Defendant.

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Now Comes Plaintiff Harry L. Smith, Jr. ("Smith" or "Plaintiff") and files and serves this Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment.

## I.  <u>STATEMENT OF THE CASE</u>

On 16 December 2016, Smith filed a Complaint against Flanders Holdings LLC ("Flanders Holdings") alleging restrictive covenants in an "Equity Buy-Out and Board of Directors Resignation Agreement" with Flanders Holdings LLC effective 20 March 2015 (the "Resignation Agreement") are overly broad and unenforceable as a matter of law. D.E. # 1. On 8 February 2017, Flanders Holdings filed its Answer. D.E. # 11. On 8 February 2017, this Court entered an Order setting the discovery deadline as 16 June 2017 and the dispositive motions deadline as 17 July 2017. DE # 12. Discovery has concluded. Smith now timely files his Motion for Summary Judgment and this accompanying Memorandum of Law with its supporting exhibits and supporting Declaration of Harry L. Smith, Jr.

## II.  <u>INTRODUCTION</u>

Smith seeks a declaratory judgment that restrictive covenants in favor of Flanders Corporation in an agreement in which he resigned from the board of Flanders Holdings are overbroad and unenforceable as a matter of law. Smith had separate restrictive covenants in

favor of Flanders Corporation in his employment agreement with that company. He fully complied with those covenants, and they expired 1 July 2016. Flanders Corporation tried to use the Resignation Agreement covering Plaintiff's resignation from the board of Flanders Holdings to obtain a second set of restrictive covenants covering the same employment relationship – Smith's employment relationship with Flanders Corporation, which ended with his resignation on 1 July 2014. This second attempt at restrictive covenants contains unenforceable terms. Defendant attempts to save these unenforceable covenants by claiming they are part of the sale of a different company, Pronamic Industries, LLC ("Pronamic Industries"). Smith and others sold Pronamic Industries on 20 February 2015. The restrictive covenants at issue in this litigation were not executed until a month later on 20 March 2015. No documents related to the sale of Pronamic Industries reference, contemplate, or require the execution of the restrictive covenants at issue. The restrictive covenants at issue were not related to any contract of employment or sale of a business, and Smith is entitled to a declaration that they are overbroad and unenforceable as a matter of law.

### III. <u>STATEMENT OF FACTS</u>

Smith entered into a "Resignation Agreement" with Flanders Holdings effective 20 March 2015. A copy of the Resignation Agreement is attached as Exhibit A. The Resignation Agreement and "all disputes between the parties under or related to this Agreement" are governed by North Carolina law. Ex. A, ¶ 18.

The purpose of the Resignation Agreement was for Smith to resign from the Board of Managers of Flanders Holdings. Compl. ¶ 8; Answ. ¶ 8. In connection with executing the Resignation Agreement, Flanders Holdings paid Smith for the par value of certain Non-Voting Units of stock. <u>Id.</u> At the time the Resignation Agreement was signed, Smith was not an

employee of Flanders Holdings, Flanders Corporation, or any entity related to Flanders Holdings or Flanders Corporation. Compl. ¶ 9; Answ. ¶ 9.

The Resignation Agreement contains a "Non-Competition" covenant in Section 6(c) that says,

> Smith hereby agrees that for a period of five (5) years after the Effective Date of this Agreement (as defined below), he shall not for himself or through any Person, directly or indirectly, engage in, participate in any business activity or enterprise that would compete in any way with the Business in the geographic areas and locations where: (i) Flanders Corp. carries on or transacts the Business, (ii) Flanders Corp. sells or markets its products or services, or (iii) Flanders Corp.'s customers are located; including without limitation (A) the world, (B) the United States of America, (C) each of the states of the United States of America, (D) the State of North Carolina, (E) each county within the State of North Carolina, (F) the territory within a 100 mile radius of Smith's office in Washington, North Carolina, and (G) the territory within a 100 mile radius of each other office of Smith (whether now existing or hereafter established). For purposes of this Agreement, the term "participate" includes any direct or indirect interest in any enterprise, whether as a stockholder, member, partner, joint venturer, franchisor, franchisee, executive, consultant or otherwise (other than by ownership of less than one percent (1%) of the stock of a publicly held corporation) or lending money to or rendering any direct or indirect service or assistance to any person or entity.

> Ex. A, ¶ 6(c).

The Resignation Agreement also contains a "Non-Solicitation of Customers or Suppliers" covenant in Section 6(d) that says,

> Smith shall not, for a period of five (5) years following the Effective Date, either directly or indirectly, for his own benefit or the benefit of any other person or entity, solicit, attempt to solicit, divert or attempt to divert, accept or attempt to accept the business or patronage of any customers or suppliers of Flanders Corp., or in any way interfere with, disrupt or attempt to disrupt any such relationships.

> Ex. A., ¶ 6(d).

As of the date Smith executed the Resignation Agreement, he was not an employee of Flanders Corporation, which is the entity allegedly protected by the Non-Competition covenant in the Resignation Agreement. Compl. ¶ 12; Answ. ¶ 12. Smith's employment with Flanders

3

Corporation ended on 1 July 2014, nearly nine months before he executed the Resignation Agreement. Id.

Flanders Solutions, LLC purchased Pronamic Industries from Smith, among others, pursuant to an Asset Purchase Agreement dated 20 February 2015. Ex. B. The Resignation Agreement was not executed until a month later on 20 March 2015. Ex. A. The Asset Purchase Agreement contains its own Restrictive Covenants in Section 4.3 beginning on page 20. Ex. B., pp. 20-22. Included in those restrictive covenants are a Non-Competition covenant (Section 4.3(b)), a Non-Solicitation of Customers and Suppliers covenant (Section 4.3(c)), and a Non-Solicitation of Employees covenant (Section 4.3(d)) covering the Seller Guarantors, including Smith. Id. The 20 February 2015 Asset Purchase Agreement does not incorporate by reference the Resignation Agreement. Ex. B.

Smith had previously executed a series of agreements with Flanders Corporation and related entities. He executed an Employment Agreement with Flanders Corporation on 16 May 2012 containing restrictive covenants with two-year terms. Ex. C. The employment under that agreement ended on 1 July 2014, and Smith executed a "Confidential Separation Agreement" that reaffirmed the two-year restrictive covenants in the Employment Agreement. Ex. D. Those covenants expired 1 July 2016. Id. Smith at all times complied with those covenants. Smith. Decl.¶ 2.

Smith has indicated to Flanders Holdings he intends to reenter the air filtration business, and Flanders Holdings has indicated to Smith it believes such activity will violate binding restrictive covenants, and it will take legal action to enforce those covenants. Compl. ¶ 28; Answ. ¶ 28. Because there is a reasonable apprehension of litigation over the covenants in the Resignation Agreement, there is a judicable controversy. Compl. ¶ 29; Answ. ¶ 29.

4

# IV. ARGUMENT

## A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party meets its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.").

## B. Summary judgment should be granted in favor of Smith

### 1. No restrictive covenant was permissible in the Resignation Agreement because it was neither part of a contract of employment nor related to the sale of any business

There are only two circumstances under which an enforceable noncompetition covenant may exist under North Carolina law: (1) as part of a contract of employment or (2) as part of the sale of a business. To be enforceable, contracts in restraint of trade must be "part of" either a contract of employment or sale of a business. Chemimetals Processing, Inc. v. McEneny, 124 N.C. App. 194, 476 S.E.2d 374, 376 (1996) (citing Professional Liab. Consultants v. Todd, 122 N.C. App. 212, 215, 468 S.E.2d 578, 580 (1996)). Flanders admits the restrictive covenants in the Resignation Agreement were not part of any contract of employment. See Ex. E. November

25, 2016 letter from S. McKinley Gray, III to Kevin Ceglowski, pp. 2-3 ("it simply cannot be shown that Smith's resignation from the Board of Directors somehow implicated an employee-employer relationship, such that the Buy-Out Agreement would be interpreted under the normal standard of review for non-competes contained in an employment agreement."). Because North Carolina law only has one possible standard for reviewing noncompetition covenants other than the standard for covenants in a contract of employment – the standard for those incident to the sale of business – the sale of business standard is the only other one that could apply. See, e.g., Chemimetals, 124 N.C. App. 196-97, 476 S.E.2d at 376. As explained below, the restrictive covenants at issue here were not incident to the sale of any business.

### a. The restrictive covenants at issue are not incident to sale of any business.

The Resignation Agreement was not incident to the sale of Pronamic Industries to Flanders Holdings or any entity related to Flanders Holdings. No business was sold pursuant to the terms of the Resignation Agreement, and the Resignation Agreement was not incident to the sale of a business. Ex. A. The Resignation Agreement was executed 20 March 2015. Id. No business was sold by Smith or any entity owned or controlled by Smith on that date. The Non-Voting Units repurchased from Smith pursuant to the Resignation Agreement represented a small fraction of the total shares in the company, and Smith realized no profit from their purchase. Smith Decl.¶ 3. Hartman v. W.H. Odell & Assocs., 117 N.C. App. 307, 450 S.E.2d 912 (1994) is instructive as to the proper standard for reviewing the covenants at issue. The court in Hartman said the fact that a stock buy-sell agreement required an employee to resell his shares in the employer corporation to the employer did not convert the covenant ancillary to the employment relationship into a covenant ancillary to the sale of a business. Hartman, 117 N.C. App. at 318, 450 S.E.2d at 920. The same logic applies here. The repurchase by Flanders of Smith's Non-

6

Voting Units does not entitle Flanders to apply the more lenient review standard applicable to sale of business transactions. The restrictive covenants in the Resignation Agreement are, therefore, overbroad and unenforceable.

The Asset Purchase Agreement does not mention Smith potentially resigning from the Board of Flanders Holdings. Ex. B. Nor does the Asset Purchase Agreement mention, contemplate, or require the execution of the Resignation Agreement. Id. The Asset Purchase Agreement does not include the Resignation Agreement anywhere in the schedule of exhibits. Id. The Asset Purchase Agreement contains its own non-competition and non-solicitation restrictive covenants in Section 4.3 Id. at pp. 20-22. Other documents related to the sale of Pronamic Industries to Flanders Solutions dated 13 March 2015 include a Closing Certificate for Pronamic Industries (Ex. F), a Closing Certificate for Flanders Solutions LLC (Ex. G), and a First Amendment to Purchase Agreement (Ex H). All of these documents were executed 13 March 2015, a week before the Resignation Agreement. See Exs. F, G. and H. None of them reference, incorporate, or contemplate the Resignation Agreement. Id. None of them amend the restrictive covenants in section 4.3 of the Asset Purchase Agreement. Id.

Similarly, the Resignation Agreement does not reference the sale of Pronamic Industries other than to list the Asset Purchase Agreement on Schedule A among a total of seven different agreements and documents. Ex. A., pp. 7, 12. Schedule A to the Resignation Agreement is only referenced to clarify nothing in the Resignation Agreement reduces or eliminates Smith's obligations pursuant to those seven other agreements and documents (see Paragraph 7 of the Resignation Agreement). Ex. A., pp. 7, 12.

It is nonsensical for Defendant to argue an entirely new set of covenants contained in a document executed one month after the Asset Purchase Agreement memorializing the sale of a

business - covenants not referred to or contemplated in that Asset Purchase Agreement - are also incident to the sale of that business. Smith has at all times complied with the Restrictive Covenants in Section 4.3 of the Asset Purchase Agreement. Defendant cannot reasonably claim the Resignation Agreement's reference to the Asset Purchase Agreement among a host of other documents in any way makes the Resignation Agreement incident to the sale of Pronamic Industries that closed one month earlier. As explained above, the covenants in the Resignation Agreement were not incident to the sale of any business. Therefore, the restrictive covenants do not fall into either of the two categories that would enable a court to enforce them. Certainly they cannot be saved by applying the more lenient standards associated with the sale of a business. Consequently, they would be negative covenants that cannot be enforced because they would be the only purpose of the Resignation Agreement. See Collier Cobb & Associates, Inc. v. Leak, 61 N.C. App. 249, 253, 300 S.E.2d 583, 585, review denied, 308 N.C. 543, 304 S.E.2d 236 (1983).

**b.**     **The restrictive covenants at issue were not made a part of any contract of employment.**

To be enforceable, North Carolina law requires a covenant not to compete be (1) in writing and signed by the employee, (2) made part of a contract of employment, (3) based on valuable consideration, (4) reasonable as to its time and territory and the scope of activities it prohibits, (5), designed to protect the employer's legitimate business interests, and (6) not unduly burdensome for the employee or against public policy. Hartman, 117 N.C. App. at 311, 450 S.E.2d at 916; Young v. Mastrom, Inc., 99 N.C. App. 120, 122-23, 392 S.E.2d 446, 448, disc. rev. denied, 327 N.C. 488, 397 S.E. 2d 239 (1990).

Defendant admits the restrictive covenants in the Resignation Agreement were not part of any contract of employment. See Ex. E. Smith was not a Flanders employee at the time he executed the Resignation Agreement. Smith resigned from Flanders Corporation on 1 July 2014,

nearly nine months before he executed the Resignation Agreement on 20 March 2015. Ex. D. This resignation was memorialized in a "Confidential Separation Agreement" dated 1 July 2014. Id. The 2012 Employment Agreement contained its own restrictive covenants related to Smith's status as an employee of Flanders Corporation, which were reaffirmed in the Confidential Separation Agreement. Ex. C. ¶ 5; Ex. D. ¶ 11. Smith fully complied with those covenants, and they expired on 1 July 2016. Smith Decl.¶ 2.

### c. Because the restrictive covenants at issue are not related to sale of any business and were not part of any employment contract, there are negative covenants that cannot be enforced.

The restrictive covenants at issue in the Resignation Agreement have no purpose related to any contract of employment or the sale of any business. Their only purpose is to attempt to restrict Smith in a way not connected to any legitimate business interest. As the court said in Reynolds & Reynolds Co. v. Tart, 955 F. Supp. 547, 553 n.5 (W.D.N.C. 1997),

> The Defendants do not contest that the covenants are "ancillary" to a valid affirmative covenant or contract, as they must be to be enforceable. See Kadis v. Britt, 224 N.C. 154, 159, 29 S.E.2d 543, 546 (1944). If the negative covenant itself "appears to be the main purpose of the contract," the covenant will not be enforced. Collier Cobb & Associates, Inc. v. Leak, 61 N.C. App. 249, 253, 300 S.E.2d 583, 585, review denied, 308 N.C. 543, 304 S.E.2d 236 (1983).

Smith signed the Resignation Agreement on 20 March 2015 in exchange for Flanders Holdings LLC agreeing to repurchase Non-Voting Units from Smith. Smith Decl.¶ 3.The price paid to Smith for those units resulted in a financial loss because he was paid only par value ($1 per share), but at the time he executed the Resignation Agreement, the shares were worth much more than $1 per share. Smith Decl.¶ 3. The ownership group of Flanders Holdings LLC pressured Smith to execute this agreement and sell back his shares for par value. Id.

Plaintiff has repeatedly offered to help the ownership and the leadership team for Flanders Corporation improve the performance of the company, and all of his efforts have been ignored. Smith Decl.¶ 5. Smith has reached out to Flanders Corporation many times, including by e-mail to the CEO of the company, offering to provide them his help at no cost. Smith Decl.¶ 5; <u>see</u> <u>also</u> Ex. I (e-mail from Smith to CEO of Flanders Corporation offering free assistance). In addition to ignoring Smith's offers of free assistance, Phil Whitaker, CEO of AAF Flanders, cursed at Smith when Smith politely introduced myself to Whitaker at Whitaker's deposition. Smith Decl.¶ 5. Also as part of the Resignation Agreement, Smith voluntarily forfeited his Long Term Incentive Compensation ("LTIC") amount. At the time he executed the Resignation Agreement, the LTIC was worth an estimated five million dollars. Smith Decl.¶ 4. Smith requested that the forfeited LTIC amount be distributed among the employees of Flanders Corporation. <u>Id.</u> Despite Smith receiving significantly less than fair market value for his shares and despite him giving up millions of dollars' worth of LTIC, the Resignation Agreement contained restrictive covenants in Paragraph 6 with worldwide territories and five-year terms that were not related to any contract of employment or the sale of any business, and which are negative covenants that cannot be enforced.

> **2.** **Even if a restrictive covenant was permissible in the Resignation Agreement, the restrictive covenants at issue are overly broad and unenforceable**

North Carolina law requires a covenant not to compete be reasonable as to its time and territory and the scope of activities it prohibits. <u>Hartman</u>, 117 N.C. App. at 311, 450 S.E.2d at 916; <u>Young</u>, 99 N.C. App. at 122-23, 392 S.E.2d at 448, disc. rev. denied, 327 N.C. 488, 397 S.E. 2d 239 (1990). "When considering the enforceability of a covenant not to compete, a court examines the reasonableness of its time and geographic restrictions, balancing the substantial right of the employee to work with that of the employer to protect its legitimate business

interests." Okuma Am. Corp. v. Bowers, 181 N.C. App. 85, 86, 638 S.E.2d 617, 618 (2007). The reasonableness of a non-competition covenant is a matter of law for the court to decide. Shute v. Heath, 131 N.C. 281, 282, 42 S.E. 704, 704 (1902). The law disfavors such agreements. Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 121-22, 516 S.E.2d 879, 883, disc. review denied, 350 N.C. 832, 539 S.E.2d 288 (1999), cert. denied, 528 U.S. 1155 (2000). The party who seeks enforcement of the covenant has the burden of proving the reasonableness of the agreement. Hartman, 117 N.C. App. at 311, 450 S.E.2d at 916. The restrictive covenants in the Resignation Agreement at issue here fall well short of reaching the standards required by North Carolina law and, therefore, are unenforceable.

### a. The more lenient standards for non-competes in a sale of business transaction do not apply

Restrictive covenants executed in conjunction with the sale of a business are granted more lenient review by the courts. As explained above, however, the Resignation Agreement was not a sale of a business. Ex. A. The Non-Voting Units repurchased from Smith under this agreement represented a small fraction of the total shares in the company, and Smith realized no profit from their repurchase. Smith Decl.¶ 3. The Resignation Agreement did not memorialize the asset purchase or stock sale of a business, and the covenants contained in it must be evaluated – if they could be analyzed at all beyond declaring them unenforceable as negative covenants - under the non-competition covenant law applicable to covenants contained in a contract of employment.

### b. The scope of the activity restrictions in the Non-Competition covenant is unenforceably overbroad

The noncompetition covenant in the Resignation Agreement is overly broad and unenforceable for several reasons. Paragraph 6(c) of the Resignation Agreement, "Non-Competition," says,

Smith hereby agrees that for a period of five (5) years after the Effective Date of this Agreement (as defined below), he shall not for himself or through any Person, directly or indirectly, engage in, participate in any business activity or enterprise that would compete in any way with the Business in the geographic areas and locations where: (i) Flanders Corp. carries on or transacts the Business, (ii) Flanders Corp. sells or markets its products or services, or (iii) Flanders Corp.'s customers are located; including without limitation (A) the world, (B) the United States of America, (C) each of the states of the United States of America, (D) the State of North Carolina, (E) each county within the State of North Carolina, (F) the territory within a 100 mile radius of Smith's office in Washington, North Carolina, and (G) the territory within a 100 mile radius of each other office of Smith (whether now existing or hereafter established). For purposes of this Agreement, the term "participate" includes any direct or indirect interest in any enterprise, whether as a stockholder, member, partner, joint venture, franchisor, franchisee, executive, consultant or otherwise (other than by ownership of less than one percent (1%) of the stock of a publicly held corporation) or lending money to or rendering any direct or indirect service or assistance to any person or entity.

Ex. A, ¶ 6(c).

The language of this paragraph, if enforced, would prevent Smith from engaging in many activities that are not competitive with and would not threaten Flanders Corporations' legitimate business interests. For example, Smith would be prohibited from working as janitor or secretary for a competitor or from providing paid or volunteer consulting service to a division of a competitor that does not compete with Flanders Corporation. North Carolina courts have repeatedly refused to enforce such overly broad restrictions.

In VisionAIR, Inc. v. James, the North Carolina Court of Appeals denied enforcement of a non-compete that prohibited the employee from:

[S]elling or developing any software products which will directly or indirectly compete with any of the Employer's software products [and] owning, managing, being employed by or otherwise participating in, directly or indirectly, any business similar to Employer's . . . within the Southeast[.]

167 N.C. App. 504, 508, 606 S.E.2d 359, 362 (2004). According to the court, the restriction was too broad in the scope of activities it prohibited to be a reasonable protection of the employer's business. Id. As a result, the court held that the non-compete was overbroad and unenforceable, saying:

> Under this covenant James would not merely be prevented from engaging in work similar to that which he did for VisionAIR at VisionAIR competitors; James would be prevented from doing even wholly unrelated work at any firm similar to VisionAIR.

Id. at 508-509, 606 S.E.2d at 362-363.

Similarly, in Hartman, the North Carolina Court of Appeals held a non-compete was overly broad and unenforceable because, rather than attempting to prevent the employee from competing for the business of the employer, it required the employee to have no association whatsoever with any business that provides services similar to those of the employer, and, for example, would prevent the employee from working as a custodian for any entity providing similar services. 117 N.C. App. at 317, 450 S.E.2d at 920. The Hartman court reiterated that the "shotgun approach" to drafting a restrictive covenant "produces oppressive results," and the court determined that the covenant was invalid. Id. at 316-17, 450 S.E.2d at 919. The purported restrictions in Paragraph 6(c) take a similar shotgun approach to limiting what Smith might do for a Flanders Corporation competitor and are unenforceable as a result. Smith is prohibited from any activity, financial support, consulting, or other activity in any way tangentially related to Flanders Corporation no matter whether or not it would create a competitive threat to Flanders Corporation.

The noncompetition covenant in the Resignation Agreement is further overbroad and unenforceable because it purports to bar Smith from "directly or indirectly" "lending money to or rendering any direct or indirect service or assistance to any person or entity." Ex. A, ¶ 6(c). This

type of restriction has been repeatedly held to be overly broad and unenforceable. In <u>VisionAIR</u>, 167 N.C. App.at 509, 606 S.E.2d at 362-63, the North Carolina Court of Appeals said, "by preventing [the defendant] from even 'indirectly' owning any similar firm, [the defendant] may, for example, even be prohibited from holding interest in a mutual fund invested in part of a firm engaged in business similar to VisionAIR. Such vast restrictions on [the defendant] cannot be enforced." Similarly, the North Carolina Court of Appeals in <u>Horner Int'l Co. v. McKoy</u>, 232 N.C. App. 559, 565, 754 S.E.2d 852, 857 (2014) said, "the NCA purports to bar Defendant from having even an indirect financial interest in such a business, a condition specifically rejected by the Court in VisionAIR, Inc." <u>Horner</u> and <u>VisionAir</u> are controlling here. The language in Paragraph 6(c) has unenforceably overbroad restrictions on Smith's financial investments, and it is unenforceable as a matter of law.

### c.     <u>The worldwide territory is unenforceable</u>

It is well-settled that non-compete covenants are designed to protect *existing* commercial relationships. <u>Manpower of Guilford County, Inc. v. Hedgecock</u>, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979). To prove a geographic restriction in a covenant not to compete is reasonable, an employer must first show ***where its customers are located*** and that the ***geographic scope*** of the covenant is necessary to maintain those customer relationships. <u>Hartman</u>, 117 N.C. App. at 312, 450 S.E.2d at 917 (emphasis added). Here, the Non-Competition covenant covers the entire world, regardless of whether Flanders actually has a customer or supplier or any operations in a particular country. Because there are many counties in the world in which Flanders has no customers, suppliers, or operations, the restricted territory is overbroad and unenforceable.

Here, the restricted territory is,

> (A) the world, (B) the United States of America, (C) each of the
> states of the United States of America, (D) the State of North
> Carolina, (E) each county within the State of North Carolina, (F)
> the territory within a 100 mile radius of Smith's office in
> Washington, North Carolina, and (G) the territory within a 100
> mile radius of each other office of Smith (whether now existing or
> hereafter established)

Ex. A, ¶ 6. However, Defendant admits its territory is actually far narrower. Interrogatory

#8 in Plaintiff's First Set of Interrogatories asked Defendant to "Identify all countries in the

world and all the states in the United States of America in which Flanders Corporation carries on

or transacts business." Ex. F., p. 13. In response, Defendant said, "At the present time, Defendant

transacts business in every state within the United States and Singapore." <u>Id.</u> Defendant has

admitted the restricted territory in the Resignation Agreement is overbroad. Flanders Corporation

does not operate worldwide. Flanders Corporation does not have any production plants outside

the United States. Smith. Decl.¶ 6. There are many countries in which Flanders Corporation does

not have any customers or suppliers. <u>Id.</u> The geographic scope of the restrictive covenants is

overbroad and unenforceable as a matter of law.

### d.   The five-year restricted term is unenforceable

The time period restricted by Paragraph 6 of the Resignation Agreement is also

unreasonable and unenforceable as a matter of law. "In evaluating reasonableness as to time and

territory restrictions, [the court] must consider each element in tandem—the two requirements

are not independent and unrelated." <u>Id.</u> As discussed above, the covenant at issue here has a

worldwide territory restriction.

Paragraph 6 of the Resignation Agreement has a five-year time restriction. "A five-year

time restriction is the outer boundary which our courts have considered reasonable, and even so,

five-year restrictions are not favored." <u>Farr Assocs., Inc. v. Baskin</u>, 138 N.C. App. 276, 280, 530

S.E.2d 878, 881 (2000); <u>CNC/Access, Inc. v. Scruggs</u>, No. 04-CVS-1490, 2006 WL 3350854, at

20 (N.C. Super. Ct. Nov. 15, 2006). Consequently, five-year terms, like the one in Smith's agreement here, are unlawful unless an employer establishes the existence of "extreme conditions." Hartman, 117 N.C. App. at 315, 450 S.E.2d at 315 (citing Engineering Associates, Inc. v. Pankow, 268 N.C. 137, 139, 150 S.E.2d 56, 58 (1966)). Here, there are not any "extreme conditions" justifying a five-year covenant.

Time restrictions, moreover, are not viewed in isolation. They must be considered in light of the territorial scope of the covenant. Farr, 138 N.C. App. at 280, 530 S.E.2d at 881 (citing United Labs., 322 N.C. at 651, 370 S.E.2d at 381). Thus, while "extreme conditions" might support a five-year term, that term is only enforceable when paired with exceptionally narrow geographic restrictions. Id.; see also, e.g., Electrical South, Inc. v. Lewis, 96 N.C. App. 160, 162, 385 S.E.2d 352, 353 (1989) (holding that two-year, global restrictions on working for competitors within 200-mile radius were unreasonably broad). Here, Defendant's five-year restrictive covenants in Paragraph 6 of the Resignation Agreement apply anywhere in the *world*. No court applying North Carolina law has ever sustained a five-year term paired with such a broad restriction.

In Masterclean of North Carolina, Inc. v. Guy, 82 N.C. App. 45, 50, 345 S.E.2d 692, 696 (1986), the court found a five-year covenant purporting to cover any county in the United States where the employer worked "patently unreasonable." North Carolina courts have held five-year restrictions are "particularly excessive in view of the broad territory covered and the small number of clients whom defendant would have to contact in order to safeguard its business from plaintiff's proselytizing efforts." Hartman, 117 N.C. App. at 315, 450 S.E.2d at 919 (citing Jewel Box Stores Corp. v. Morrow, 272 N.C. 659, 665, 158 S.E.2d 840, 844 (1968) ("a longer period of time is justified where the area in which competition is prohibited is relatively small."));

contra Welcome Wagon Int'l, Inc. v. Pender, 255 N.C. 244, 120 S.E.2d 739 (1961)(upholding a five-year covenant where the restricted territory was only one city). Where, as here, a covenant has a worldwide geographic restriction, a five year restriction cannot be enforced.

> 3.    **The "Non-Solicitation of Customers or Suppliers" provision is also unenforceable**

Paragraph 6(d) of the Resignation Agreement, "Non-Solicitation of Customers or Suppliers," says,

> Smith shall not, for a period of five (5) years following the Effective Date, either directly or indirectly, for his own benefit or the benefit of any other person or entity, solicit, attempt to solicit, divert or attempt to divert, accept or attempt to accept the business or patronage of any customers or suppliers of Flanders Corp., or in any way interfere with, disrupt or attempt to disrupt any such relationships.

Non-solicitation covenants are subject to the same legal restraints as non-competition covenants. See QSP, Inc. v. Hair, 152 N.C. App. 174, 566 S.E.2d 851 (2002). Courts applying North Carolina law evaluate non-competes and non-solicitation agreements through the same lens. See, e.g., United Lab., Inc. v. Kuykendall, 322 N.C. 643, 648-50, 370 S.E.2d 375, 379-80 (1988) (explaining the law for restrictive covenants includes both non-competes and non-solicitation agreements). "[W]here the provision purports to bar passive acceptance of work from a previous client, it constitutes a customer-contact non-compete because it has the same effect of barring the former employee from competing for his former clients." Lab. Corp. of Am. Holdings v. Kearns, 84 F. Supp. 3d 447, 458 (M.D.N.C. 2015). The relevant restriction in Smith's Resignation Agreement says he may not either solicit **_or accept_** any business from Flanders Corporation's customers or suppliers. Because the Resignation Agreement purports to prohibit Smith from accepting business, it must be evaluated under the strict standards that non-competition covenants must meet to be enforceable rather than the less stringent standards

applicable to nonsolicitation covenants. As discussed above, the covenant is unenforceable when viewed as a noncompetition restriction because the time and territory are overbroad.

### 4. The Restrictive Covenants in the Resignation Agreement Cannot Be Saved by "Blue-Penciling."

The restrictive covenants in Paragraph 6 of the Resignation Agreement, which are overbroad and unenforceable, cannot be saved by judicial modification. North Carolina law strictly prohibits courts from re-writing overbroad and unenforceable restrictive covenants for enforcement purposes. When a non-compete is unreasonably broad, courts are "severely" limited in their ability to blue-pencil offensive provisions. Hartman, 117 N.C. App. at 307, 450 S.E.2d at 920. A court "at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant." Id. "If a non-compete covenant is 'too broad to be a reasonable protection to the employer's business it will not be enforced. *The courts will not rewrite a contract if it is too broad but will simply not enforce it*.'" VisionAIR, 167 N.C. App. at 508, 606 S.E.2d at 362 (emphasis added) (quoting Whittaker General Medical Corp., 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989)). In other words, if a restrictive covenant is too broad, as are the restrictive covenants in Paragraph 6 of the Resignation Agreement, "the entire covenant fails since equity will neither enforce nor reform an overreaching and unreasonable covenant." Beasley v. Banks, 90 N.C. App. 458, 460, 368 S.E.2d 885, 886 (1988).

At most, a court "may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable." Hartman, 117 N.C. App. at 317, 450 S.E.2d at 920. The overbroad and unenforceable provisions at issue here are not "a distinctly separable part of a covenant." Judicial modification, therefore, is not an option. The restrictive covenants in Paragraph 6 of the Resignation Agreement are facially overbroad and unreasonable, and,

therefore, unenforceable as a matter of law. And because North Carolina law prevents this Court from "blue-penciling" or modifying the language of the covenant to make it enforceable, judgment should be entered in Smith's favor declaring these restrictive covenants unenforceable as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Smith respectfully requests this Court enter judgment in his favor declaring the "Non-Competition" and "Non-Solicitation of Customers or Suppliers" covenants in Paragraph 6 of the Resignation Agreement overbroad and unenforceable.

Respectfully submitted, this the 20th day of June 2016.

**POYNER SPRUILL LLP**

By:     */s/ Kevin M. Ceglowski*
         Kevin M. Ceglowski
         N.C. State Bar No. 35703
         301 Fayetteville Street, Suite 1900
         Raleigh, NC 27602-01801
         Telephone:  (919) 783-6400
         Facsimile:  (919) 783-1075
         kceglowski@poynerspruill.com

         ATTORNEYS FOR PLAINTIFF HARRY
         L. SMITH, JR.

## CERTIFICATE OF SERVICE

I hereby certify that have this day, I electronically filed the foregoing **Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

> S. McKinley Gray, III
> Devon D. Williams
> Ward and Smith, P.A.
> Post Office Box 867
> New Bern, NC 28563-0867
> smg@wardandsmith.com
> ddwilliams@wardandsmith.com
> *Attorneys for Defendant*

This the 20th day of June 2017.

**POYNER SPRUILL LLP**

By:   */s/ Kevin M. Ceglowski*
      Kevin M. Ceglowski